## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION


STEPHEN R. LILLEY,                                    Case No. 1:15-cv-128

        Plaintiff,                                  Barrett, J.
                                                     Bowman, M.J.
   v.

HON. ROBERT PEELER, et al.,

        Defendants.


## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se*, initiated this action on February 23, 2015 by filing a lengthy complaint against multiple Defendants.  Pursuant to local practice, this case has been referred to the undersigned for initial consideration and a Report and Recommendation on four motions to dismiss that have been filed by the Defendants. (Docs. 15, 16, 22, 26).  For the reasons that follow, all of the Defendants' motions should be granted.

### I.  Background

Plaintiff's Complaint spans 185 typed pages and contains 705 paragraphs.[1]  He alleges that, "the actions in this complaint have taken place over a period of approximately nineteen years," causing him "Post Traumatic Stress Disorder/Legal Abuse Syndrome (PTSD/LAS),"[2] through "legal and mental abuse in the Warren County

---

[1]The complaint begins with paragraphs 1 through 577; thereafter, the numbering begins anew with paragraphs 1 through 128.

[2]The undersigned takes judicial notice that the phrase "Legal Abuse Syndrome" does not appear as any type of diagnosis listed in the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), but rather, appears to have been coined by author Karin Huffer.  In a book of the same title, Ms. Huffer describes Legal Abuse Syndrome as a type of PTSD brought on by abusive and protracted family court litigation.

Court of Common Pleas." (Complaint, Doc. 1, ¶¶22-23; Doc. 21 at 3).  By way of background, Lilley's lengthy complaint refers to an "unresolved Guardianship Conspiracy [that] spun-off into 13 years of Lawless Violence and trickery during the Probate Period plummeting into a Grave Miscarriage of Justice." (Doc. 1, ¶ 25).

Plaintiff generally alleges that attorney Brenda Dunlap, Guardian Patricia Suttman, Pamela Lilley, and others "known and unknown, engaged in criminal conspiracies to embezzle $150,000 of survivorship accounts for personal gain." (*Id.*, ¶30).  He explains that this federal lawsuit touches upon multiple underlying cases in state court, referencing seven different case numbers.  He states that his complaint involves a "thirteen year long probate case, Case Number 971061 that involved the conversion and depravation of Plaintiff's $100,000 of personal property, four years as a victim in Case Numbers: 06CV66195, 07CV69736, 07CV69823, 07CV69890, during the Lawsuits for Redress Period in an attempt to recover Plaintiff's $100,000 of personal property along with other damages caused during the Probate Period, and a defendant in the General Division, Case Numbers: 12CV81588 and 13CV84556 which had been conceived as a result of a gross miscarriage of justice during the Probate Period and the Lawsuits for the Redress Period."  (Doc. 21 at 4).[3]

Despite identifying Brenda Dunlap, Patricia Suttman, and Pamela Lilley as playing central roles in the alleged wrongdoing, Plaintiff has not named those individuals as parties to this lawsuit.  Instead, Plaintiff's federal complaint identifies as Defendants the following individuals, groups, and entities:  (1) Robert Peeler, individually and in his official capacity as Justice of the Warren County Court of Common Pleas, General Division; (2) Magistrate Andrew Hasselbach (also individually and in his official

---

[3]It appears that some of these cases arose from probate disputes that were appealed four times, as well as a tort action in the Warren County Court of Common Pleas. (Complaint at ¶¶58, 106).

capacity); (3) Eric Holder, the United States Attorney General (in his official capacity) as well as 100 John Doe Employees of the Department of Justice individually; (4) Mike DeWine, the Attorney General of the State of Ohio (in his official capacity) and 100 John Doe Employees of the State of Ohio individually; (5) the Board of Commissioners of Warren County (in their official capacity) and 100 John Doe employees of Warren County individually; (6) First Financial Bank NA; (7) Jack C. McGowan; (8) American Express Bank FSB; and (8) GE Money Bank.

At the outset, it must be noted that Plaintiff's complaint fails to comply with Fed. R. Civ. P. 8(a), which provides that the complaint contain a "short and plain statement of the claim." Because of its length, level of detail and the over-inclusive nature of plaintiff's allegations stemming from numerous incidents that allegedly occurred over many years, the complaint presents a difficult challenge to the Defendants in terms of the preparation of their respective responsive pleadings, and to this Court to conduct orderly litigation. *Cf. Flayter v. Wisconsin Dep't of Corr.*, 16 Fed. Appx. 507, 508-09 (7th Cir. 2001)(concluding that the district court could have dismissed the 116-page complaint for failure to comply with Fed. R. Civ. P. 8 in case where the complaint set forth "in tedious and difficult-to-follow detail what appears to be every request for medical attention Flayter made while in . . . custody and every medical examination he has had since his injury in 1990" and contained allegations "relating to numerous different incidents and defendants"); *see also Banks v. Doe*, 523 Fed. Appx. 503, 2013 WL 3822132 (10th Cir. July 25, 2013)(affirming *sua sponte* dismissal of action for non-compliance with Rule 8 in case where the amended complaint expanded from 28 pages to 91 pages with over 30 defendants, and was based on "numerous instances of allegedly illegal and unconstitutional treatment [from May 2009 through December 2012] while [the plaintiff] was housed in different detention facilities"); *Levinson v.*

*WEDU-TV*, 505 Fed. Appx. 919, 920 (11th Cir. 2013)(*per curiam*) (finding no error by the district court in dismissing case without prejudice where the plaintiff originally filed a 500-page "petition" and 300-page "addendum" and, in response to the court's order to submit a short and plain statement of his claim, thereafter filed a 263-page amended complaint). Nevertheless, the Defendants have done their best to address the varying allegations against them by filing separate motions to dismiss.[4] As discussed below, those motions should now be granted.

Assuming the four pending motions are granted, the only remaining Defendants would be those who have not filed any answer or otherwise appeared: First Financial Bank NA, Jack C. McGowan, American Express Bank FSB, and GE Money Bank. Because there is no indication in the record that any of those Defendants have been properly served, the time for service has passed, and because it is abundantly clear that there is no federal jurisdiction over any of Plaintiff's claims, this case should be dismissed in its entirety.

### II. Standard of Review

For the convenience of the Court, each of the Defendants' respective motions is separately addressed below: (1) the motion of the judicial defendants; (2) the motion of Ohio Attorney General and 100 John Doe state employees; (3) the motion of the United States Attorney General and 100 John Doe Department of Justice employees; and (4) the motion of the Warren County Board of Commissioners and 100 John Doe county employees. The same standards of review apply to all four motions.

---

[4]Defendant DeWine argues that, should this Court decline to dismiss, Plaintiff should be required to file an amended complaint that complies with Rule 8. The United States Attorney General and the Warren County Board of Commissioners also persuasively argue that Plaintiff's complaint fails to comply with Rule 8(a)(2) and is subject to dismissal on that basis alone.

## A.  Subject Matter Jurisdiction Under Rule 12(b)(1)

All four motions at least partially challenge the subject matter jurisdiction of this Court under Rule 12(b)(1), while alternative arguments assert that Plaintiff has failed to state any cognizable claim under Rule 12(b)(6).  In general, a motion to dismiss based on a lack of subject matter jurisdiction must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 592 (S.D. Ohio 2002) (explaining that a Rule 12(b)(6) motion challenge becomes moot if the court lacks subject matter jurisdiction, citing *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990)).

A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading.  *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir.1990).  In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss.  *Id.*  On the other hand, a factual attack on jurisdiction is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction."  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "On such a motion, no presumptive truthfulness applies to the factual allegations ... and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Id.* (*citing Ohio Nat. Life Ins. Co.*, 922 F.2d at 325).

## B.  Failure to State a Claim Under Rule 12(b)(6)

In contrast to a motion to dismiss for lack of subject matter jurisdiction, a motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the claims.  The court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true.  *See Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974) and *Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998).  A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations.  *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974).  A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations omitted);  *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citations omitted).

### III.  Analysis of Four Motions

### A.  Motion of Judicial Defendants (Doc. 15)

#### 1.  Causes of Action/Allegations

Plaintiff's first 22 causes of action are set forth against Judge Peeler and Magistrate Hasselbach (hereinafter the "Judicial Defendants"), and are all ostensibly brought pursuant to 42 U.S.C. §1983. (Doc. 1 at pp. 95-130).  In a response to the Judicial Defendants' motion to dismiss, however, Plaintiff argues that his claims should be interpreted as alleging a violation of Title II of the Americans with Disabilities Act, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.  (Doc. 21 at 11).

Lilley alleges that in May 2006, Dunlap, Probate Court Judge Michael Powell, Judge David Sunderland, Judge Neal Bronson, Judge Peeler, and attorney F. Harrison Green "implemented a scheme to deprive PLAINTIFF of his basic human rights." (Doc. 1, ¶ 105).  Plaintiff alleges that the two named Judicial Defendants, Judge Peeler and Magistrate Hasselback, presided over two cases that Plaintiff filed in November 2007 in state court against various defendants that concerned guardianship and estate matters: (1) Warren County Case No. 07CV69736, "Plaintiff Stephen R. Lilley vs. Defendants Suttman, Dunlap, and [Pamela Lilley]; with Cause of Actions: Tortious Interference with a right of expectancy, Common Law Fraud, and Conversion," (Doc. 1, ¶ 137); and (2) Case No. 07CV69823, "Stephen R. Lilley vs. Defendants Dunlap, and Hedges, with Cause of Actions: Tortious Interference with a right of expectancy, Common Law and Fraud," (*Id.*, ¶ 138).  Both cases were initially assigned to Judge Peeler.   (*Id.*).

Lilley alleges that "Defendant Magistrate Dunlap's colleagues (Judge Bronson, Judge Peeler, Judge Powell, Magistrate Page Crossley-Tate) and even Defendant Magistrate Dunlap herself scripted the entire proceedings." (Doc. 1, ¶ 140). Lilley alleges that on May 20, 2013, he filed a Continuance to Obtain Counsel and presented a document to Judge Peeler stating: "I Stephen R. Lilley am a disabled citizen protected under the Americans with Disability Act (ADA) who needs accommodations and have no testimonial or participatory access to the court." (Doc. 1, ¶ 235).  He alleges that he was suffering from extreme trauma and was "not competent to make any decisions at that time," but that Judge Peeler refused to allow him counsel, "and threatened him with

making the decision to give up his protection under the ADAAA[5] or spend 15 days in jail." (Doc. 1, ¶ 236). Lilley complains that Judge Peeler thereby denied him access to the courts and circumvented federal laws. (Doc. 1, ¶ 240). Lilley alleges Judge Peeler "also denied the admission of evidence and third party liability" to cover up for his colleagues and for himself. (Doc. 1, ¶ 243).

Lilley's allegations against Magistrate Hasselbach are similar. He alleges that on June 21, 2012, "spearheaded by Magistrate Hasselbach," an opposing party's motion to compel was approved and Lilley was threatened with contempt of court if he did not show up for the next hearing. (Doc. 1, ¶¶ 207-208). Lilley alleges that Magistrate Hasselbach acknowledged that Lilley was on medical leave, but badgered Lilley's ADA advocate claiming she had full power of attorney. (Doc. 1, ¶ 232). Lilley alleges Magistrate Hasselbach issued a capias for Lilley and that the sheriff's department picked Lilley up and took him to the county jail. (Doc. 1, ¶ 233). Lilley concludes that, like Judge Peeler, Magistrate Hasselbach also circumvented federal laws, and "denied the admission of evidence and third party liability." (Doc. 1, ¶¶ 240, 243).

In allegations that jointly implicate both Judge Peeler and Magistrate Haselbach, Plaintiff alleges that beginning two years earlier in 2010, Judge Bronson, Judge Peeler, Magistrate Hasselbach and others conspired to injure, oppress, threaten and intimidate him. (Doc. 1, ¶¶ 250-251). Lilley further alleges that Magistrate Hasselbach "would spearhead a scheme to run up legal fees and pay all the lawyers off the top." (Doc. 1, ¶ 254).

In summary, Lilley claims both Judicial Defendants violated his constitutional rights under the state and federal Constitution. Specifically, he contends they violated his due process, freedom of speech, and equal protection rights. In a response to the

---

[5]The acronym "ADAAA" is presumed to refer to the ADA Amendments Act of 2008.

Judicial Defendants' motion to dismiss, he asserts that he requested accommodations under the ADA but was not answered by the ADA Coordinator, Administrator, or Stewardship.  He asserts that he sought to file a grievance but there was no grievance procedure available to him.  (Doc. 21 at 12).

### 2.  Lack of Subject Matter Jurisdiction and Judicial Immunity

Plaintiff's claims against the Judicial Defendants are subject to dismissal for two reasons: (1) because this Court lacks jurisdiction under the *Rooker–Feldman* doctrine; and (2) because both Judicial Defendants enjoy absolute immunity from suit.

### a.  Rooker-Feldman Doctrine

First, under 28 U.S.C. § 1257, final judgments of state courts are entitled to receive full faith and credit from federal courts, and lower federal courts lack jurisdiction to review state court decisions.  Instead, state court decisions may reviewed only by the United States Supreme Court.  *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  The doctrine applies to any case in which a plaintiff attempts to bring an impermissible attack on a state court judgment.  The Supreme Court has explained that the doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *In re Smith*, 349 Fed. Appx. 12, 14 (6th Cir. 2009)(quoting *Exon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

In this instance, Plaintiff has not challenged the constitutionality of any state law or rule, but instead has argued that the adjudication of the above matters under the applicable laws were themselves unconstitutional. Plaintiff contends that the Judicial Defendants denied the admission of evidence and third party liability "to cover-up the

Theft in Office by Chief Magistrate Dunlap." (Doc 1, ¶244).  Plaintiff further contends that the Judicial Defendants deprived him of due process "by rigging all judicial procedures in favor of their friends and colleagues." (*Id.,* ¶252).    The judicial proceedings allegedly were rigged "by depriving his rights to discovery; the production of documents and things, depositions, and interrogatories and other legal rights secured by the Constitution and laws of the United States." (*Id.,* ¶253). Although Plaintiff contends that the alleged errors resulted in the deprivation of his constitutional rights, "there is no federal jurisdiction when the claim is 'a specific grievance that the law was invalidly-even unconstitutionally-applied in the plaintiff's particular case.'" *Loriz v. Connaughton*, 233 Fed. Appx. 469, 474 (6th Cir. 2007)(quoting *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002)).

Plaintiff attempts to avoid application of the doctrine by asserting that his complaint does not ask the Court to reconsider the Warren County courts' rulings, but rather asserts a violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12131 et seq. (Doc. 21, at 16).  However, the injuries alleged all stem from the decisions made in his state court proceedings, and relief is predicated on a determination that the Judicial Defendants improperly adjudicated the state court cases. *Accord Richter v. Connecticut Judicial Branch*, 2014 WL 1281444 (D. Ct. March 27, 2014)(dismissing plaintiff's ADA claims under *Rooker-Feldman* that she developed legal abuse syndrome as a result of the state courts' failure to accommodate and protect her under the ADA).  The *Richter* court's analysis applies with equal force here:

> The requirements for Rooker-Feldman are unmistakably satisfied.  First, Plaintiff claims [he] lost numerous rulings and judgments entered in state court.   Second [he] alleges that those judgments were the result of discrimination under the ADA and have caused [him] injury.  Third, [he] requests this Court to review and overturn those decisions.  Fourth, the challenged court proceedings terminated well before the filing of this suit.

Id. at *8.  In short, the instant case is precisely the type of case that the *Rooker-Feldman* doctrine seeks to prohibit.

### b. Judicial Immunity

The doctrine of judicial immunity provides a second and independent basis for dismissal of Plaintiff's claims against the Judicial Defendants.  That doctrine bars suit under §1983, whether suit is brought for money damages or for injunctive and declaratory relief – with limited exceptions inapplicable to this case.[6]  *See generally* 42 U.S.C. §1983; *Pierson v. Ray*, 386 U.S. 547 (1967).  Moreover, the doctrine attaches to judicial acts, not merely the judicial actors.  To that extent, the doctrine applies to all claims against the Judicial Defendants including Plaintiff's claims that he has sued the two judges in both their official and individual capacities.  *Id.*

The doctrine of judicial immunity applies even where a judge acts in error, in excess of jurisdiction, in bad faith or maliciously.  *Stump v. Sparkman*, 435 U.S. 349 (1978).  Additionally, judicial immunity "operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities." *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (citing *DePiero v. City of Macedonia*, 180 F.3d 770, 783 (6th Cir. 1999)).

In the instant case, Plaintiff contends that the judicial defendants "acted administratively, not judicially, when refusing Plaintiff's auxiliary aids." (*See, e.g.*, Doc. 21 at 2).  However, Plaintiff's allegations fail to demonstrate that the Judicial Defendants acted without jurisdiction or acted in a non-judicial capacity.  As the Supreme Court noted in *Stump v. Sparkman*, 435 U.S. at 356–57, "the scope of the judge's jurisdiction

---

[6]The doctrine also bars suit for declaratory relief under 42 U.S.C. §1983 unless a declaratory decree was violated or declaratory relief is unavailable.  The undersigned finds it unnecessary to explain why these exceptions are inapplicable, beyond expressing agreement with Defendant's on the issue (*See generally* Doc. 15 at 11-12); *see also Richter*, *supra* at *10.

must be construed broadly.... A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.* (additional citation and internal quotation marks omitted).

Here, there is no question that the Judicial Defendants acted within their jurisdiction, *see* Ohio Rev. Code §§ 2931.03 (jurisdiction of court of common pleas). Additionally, the decisions made by the Judicial Defendants in the underlying state court cases were clearly judicial in nature.

Plaintiff protests, arguing that the "processing of auxiliary aid requests can easily be, and often is, a function performed by court administrators rather than judges." (Doc. 21 at 16). Relying on *Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir. 1989), Plaintiff argues that the Judicial Defendants acted in an administrative capacity on the facts presented.

*Morrison* is easily distinguishable. In that case, a Chief Judge issued a moratorium on writs of restitution over the holiday weeks – an act that was legislative rather than judicial in nature. Here, the actions of the two judges of which Plaintiff complains occurred in the course of his appearances before them (and their associated rulings) in his specific state court cases. As the *Morrison* court stated, "the paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court." *Id.* at 465. Plaintiff complains about that exact type of "paradigmatic judicial act" by alleging, for example, that Judge Peeler "denied the admission of evidence and third party liability" to cover up for his colleagues and himself." (Doc. 1, ¶243). He alleges that if it were not for the acts and omissions of Judge Peeler, "Case Number 07CV69736 and 07CV69823…would never have existed." (Complaint at ¶245). He complains that Magistrate Hasselbach "spearheaded" approval

12

of a motion, threatened Plaintiff with contempt of court, badgered an ADA advocate, and issued a capias for Plaintiff." (Complaint at ¶¶207-208, 233). All of Plaintiff's allegations pertain to acts taken by the Defendants in their judicial capacities and normally carried out by judges. *See also Richter, supra*, at *10 (rejecting claim that judge acted in administrative capacity when the heart of plaintiff's claims concerned judge's alleged denial of ADA accommodations in particular case).

Nor does Plaintiff's assertion that the Defendants participated in a "conspiracy" against Plaintiff alter the equation. "The rationale of the doctrine of judicial immunity— 'the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants'—also is equally applicable to [a party's] charge that in performing their judicial duties the judges of [a] court were engaging in a conspiracy against [a party]." *Green v. Seymour*, 59 F.3d 1073, 1078 (10th Cir. 1995)(quoting *Pulliam v. Allen*, 466 U.S. 522, 537–38, (1984)). *See also generally Affeldt v. Carr,* 628 F. Supp. 1097, 1102 (N.D. Ohio 1985). Accordingly, Plaintiff's claims against the Judicial Defendants are also barred by judicial immunity.

### c. Qualified Immunity

To the extent that the Judicial Defendants are not absolutely immune from all claims filed against them in their individual or official capacities, they would nevertheless be immune from any claims filed against them in their individual capacities for any non-judicial or administrative actions, because Plaintiff cannot show that either judge violated a "clearly established statutory or constitutional right of which a reasonable official would have known." *Accord Morrison*, at 466 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1987)).

### d.  Failure to State a Claim

To the extent that Plaintiff asserts that the Judicial Defendants issued improper decisions, his allegations fail to allege the cognizable deprivation of a federal right, and therefore fail to state a federal claim under §1983.  *See generally Agg v. Flanagan*, 855 F.2d 336, 339 (6th Cir. 1988)(incorrect decision by Ohio court does not constitute a deprivation of due process).

Additionally, in order to make a claim for a violation of Title II of the ADA, Plaintiff must establish: (1) that he has a disability; (2) that he is otherwise qualified; and (3) that he is being excluded solely because of his disability.  *See generally Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998).  Plaintiff makes no more than conclusory allegations that he has a disability, and does not allege in his complaint that he was disabled prior to the state court proceedings.  To the contrary, Plaintiff alleges that he developed PTSD and/or other injury "as a result of" the adverse decisions in Case No. 07CV69823 and Case No. 07CV69736.  (*See, e.g.*, Doc. 20 at 3, "Plaintiff Stephen R. Lilly has a mental impairment…(PTSD/LAS)…as a result of nearly 18 years as a victim of legal and mental abuse in the Warren County Court of Common Pleas…..").

Plaintiff's conclusory allegations that the two judges engaged in some type of conspiracy or violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") also fail to state a claim.  "Claims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a §1983 claim."  *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004).

## B.  Attorney General DeWine (Doc. 16)

### 1.  Allegations and Claims

Plaintiff's claims against Attorney General DeWine and 100 "John Doe" employees of the Ohio Attorney General relate solely to the allegation that Plaintiff "filed a Public Corruption Complaint with the Ohio Attorney General" on August 27, 2008. (Doc. 1, ¶ 266.) Plaintiff asserts that the public corruption complaint "exposed the theft of PLAINTIFF's $100,000 of personal property and the theft in office by Magistrate DUNLAP, a Warren County employee while on duty as a Court Magistrate." (*Id.*) He makes repeated accusations that Attorney General DeWine then "neglected to take any action." (*Id.; see also id.* ¶ 27, 156).

Based on the above allegations, Plaintiff asserts eleven causes of action against Attorney General DeWine and/or his "John Doe" employees under 42 U.S.C. § 1983 including denial of Plaintiff's freedom of speech; failure to train, supervise, or monitor; denial of procedural due process; denial of substantive due process; denial of equal protection; violation of the Americans with Disabilities Act; civil conspiracy; and violation of Racketeer Influenced and Corrupt Organizations Act (RICO). (Doc. 1 at pp. 139-155).

Plaintiff's claims against Defendant DeWine are brought against him solely in his official capacity, which is akin to a claim against the State of Ohio.  In fact, in the body of his Complaint Plaintiff lists his claims as against the "State of Ohio," even though he has not directly named the State of Ohio itself as a party. Plaintiff seeks an award of compensatory and punitive damages as well as declaratory and injunctive relief to prevent Defendants from committing future violations of his constitutional rights. (Doc. 1, ¶¶180-183).

### 2. Grounds for Dismissal

### a. Eleventh Amendment Immunity and the ADA

Attorney General DeWine argues first that he and any John Doe employees as to whom Plaintiff has filed in their official capacity are entitled to Eleventh Amendment immunity. The Eleventh Amendment prohibits a citizen of a state from suing that state or one of its agencies in federal court unless the state consents to such suit or there is an express statutory waiver of immunity.

In his response, Plaintiff argues that the Eleventh Amendment does not bar his suit for damages under Title II of the ADA, because Congress expressly abrogated the States' immunity under the ADA. *See generally* 42 U.S.C. §12202. In reply, Defendant DeWine points out Plaintiff has listed every count against Defendant DeWine under 42 U.S.C. §1983, and Congress did not abrogate the Eleventh Amendment immunity of the States in enacting §1983. *See Quern v. Jordan*, 440 U.S. 332, 341-43 (1979).

However, the Defendant's argument fails to fully address the fact that two of Plaintiff's claims simultaneously reference the ADA and/or the Rehabilitation Act, in addition to §1983. (Doc. 1 at pp, 145-146). Plaintiff is correct in his contention that Congress has expressly abrogated sovereign immunity under the ADA, at least for claims involving the right of access to the courts. *See generally Tennessee v. Lane*, 541 U.S. 509 (2004); *see also Richter v. Connecticut Judicial Branch*, 2014 WL 1281444 at *5 (D. Ct., March 27, 2014)(citing *United States v. Georgia*, 546 U.S. 151, 159 (2006) for proposition that the issue of whether Title II validly abrogates state sovereign immunity for conduct that does not violate the Fourteenth Amendment must be considered on a claim-by-claim basis).

Nevertheless, Plaintiff's allegations still fail to state a claim. As previously indicated in addressing the argument of the Judicial Defendants, Plaintiff fails to make anything but the most conclusory allegations that he has a disability under the ADA, but instead generally alleges that he has acquired "Post Traumatic Stress Disorder/Legal Abuse Syndrome" "as a result of" his years of litigation. (Doc. 1, ¶22). Even more importantly, Plaintiff's allegations fail to make out any type of claim that Attorney General DeWine discriminated against Plaintiff on the basis of his alleged disability. In his response in opposition to dismissal, Plaintiff alleges that he "called" Defendant DeWine's office to find out how to apply for an accommodation. (Doc. 20 at 4). However, that argument does not make out an ADA claim. Plaintiff also fails to address the Defendant's position that a decision not to prosecute Plaintiff's "public corruption complaint" did not deprive Plaintiff of any right under 42 U.S.C. §1983, including but not limited to his rights under the ADA.

### b. Respondeat Superior

Additionally, any claims that Plaintiff is attempting to bring against Defendant DeWine based upon actions taken (or not taken) by employees in his office fail to state a claim, because *respondeat superior* does not apply under §1983. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691-695 (1978).

### c. No Right to Compel Prosecution

To the extent that Plaintiff is complaining of Defendant DeWine's discretionary decision not to pursue a prosecution against state court judges or other would-be defendants, Plaintiff also fails to state a claim. "[T]he law is clear that there is no 'constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime.'" *White v. City of Toledo*, 217 F. Supp.2d 838, 841 (N.D. Ohio 2002)(internal citation and quotation marks omitted). A

private citizen "has no cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

### d. Claims Are Time-Barred

Last, any claim against Defendant DeWine and/or his employees would be untimely as barred by the two-year statute of limitations applicable under Ohio law – regardless of whether Plaintiff's claim is considered under §1983 or recast as an ADA claim. *See generally Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)("actions brought pursuant to 42 U.S.C. §1983 apply the statute of limitations from a state's general personal injury statute."); *see also McCormick v. Miami University*, 693 F.3d 654, 664 (6th Cir. 2012)("Ohio's personal injury actions also govern the limitations period for claims in Ohio arising under Title II of the ADA."). Plaintiff's allegations against Defendant DeWine date back to the Defendant's alleged inaction in response to a public corruption complaint filed by Plaintiff on August 27, 2008, more than six years prior to the date that Plaintiff filed this federal complaint. *Accord Richter, supra*, at *11 (holding that statute of limitations would bar claim that ADA violations have caused ongoing injuries).

### C. The United States Attorney General and John Doe Employees

### 1. Allegations and Claims

Similar to his allegations against the Ohio Attorney General, Plaintiff alleges that he made complaints to the United States Attorney General[7] and Department of Justice, but that the Department did not act on those complaints in the manner he desired. (Doc. 1, ¶27.) Specifically, Plaintiff alleges that on July 13, 2009, he filed a complaint with the United States Department of Justice, the United States Attorney, and the FBI under

---

[7]Although Eric B. Holder was named as the person holding the office of Attorney General at the time Plaintiff filed suit, Loretta E. Lynch was sworn in as the Attorney General of the United States on April 27, 2015, and was automatically substituted as a party pursuant to Rule 25(d), Fed. R. Civ. P.

federal civil rights statutes regarding his Ohio cases. (*Id.*, ¶172). Plaintiff also alleges that he filed a complaint with the United States Department of Justice on January 6, 2010. (*Id.*, ¶175). Plaintiff contends that the Department of Justice did not investigate his allegations. (*Id.*, ¶268).

Plaintiff brings five claims against "Defendants: Federal Government." (*Id.*, ¶¶471-512). In addition to the United States Attorney General, Plaintiff also names "Employees of the Department of Justice Individually, (DOES 1-100 Inclusive)" as Defendants. However, Plaintiff has not attempted to serve or identify any individual employee; therefore, the only federal Defendant presently before this Court is the U.S. Attorney General, named solely in his official capacity.

Each of Plaintiff's claims is brought pursuant to 42 U.S.C. § 1983. (*Id.*). Plaintiff alleges that the Defendant violated his procedural due process, substantive due process, equal protection, and freedom of speech rights, and also failed to train, supervise, or monitor Defendant's employees. (*Id.*).

### 2. Grounds for Dismissal

#### a. Sovereign Immunity

The United States, as sovereign, is immune from suit unless it consents to be sued, and the terms of its consent define a court's jurisdiction to entertain the suit. *U.S. v. Testan*, 424 U.S. 392, 399 (1976). This principle extends to agencies of the United States, which are also immune absent a showing of a waiver of sovereign immunity. *Whittle v. U.S.*, 7 F.3d 1259, 1262 (6th Cir. 1993) citing *Testan*, 424 U.S. 392. The waiver of sovereign immunity must be express, clear, and unequivocal. *Reed v. Reno*, 146 F.3d 392, 398 (6th Cir. 1998) citing *Coleman v. Espy*, 986 F.2d 1184, 1189 (8th Cir. 1993). Furthermore, the claim itself must fall within the terms of the waiver. *U.S. v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003).

Plaintiff has the burden to identify a waiver of sovereign immunity in order to proceed with a claim against the United States. *Reetz v. U.S*., 224 F.3d 794, 795 (6th Cir. 2000). If a plaintiff cannot identify a waiver, the claim must be dismissed on jurisdictional grounds. *Id.* Here, Plaintiff has not identified an effective waiver of sovereign immunity. Plaintiff brings each of his claims against Defendant pursuant to 42 U.S.C. § 1983. Section 1983, however, does not apply to federal government actors. See e.g. *Dixon v. Veterans Administration*, 1988 WL 49082, *1 (6th Cir. May 19, 1988); *Snyder v. United States*, 990 F.Supp.2d 818, 836 (S.D. Ohio 2014)(*aff'd*, 590 Fed. Appx. 505); *Shepherd v. Sheldon*, 2011 WL 2971965, *7 (N.D. Ohio July 21, 2011). Plaintiff has identified no other waiver of sovereign immunity that could potentially apply to his claims. For these reasons, Plaintiff's Complaint against the federal Defendant should be dismissed for lack of jurisdiction.

### b. No Right To Investigation/Prosecution Under Federal Law

In his response, Plaintiff again attempts to reframe his claims under the ADA, even though his Complaint clearly states otherwise. Even if Plaintiff were permitted to amend, sovereign immunity would prevent such a claim. Further, the ADA does not apply to the United States, its agencies, or its employees. *See e.g.,* 42 U.S.C. §12111(5); *Henrickson v. Potter,* 327 F.3d 444, 447 (5th Cir. 2003); *Ellis v. Christopher*, 2015 WL 419024, *1, n. 1 (W.D. Tenn., Jan. 30, 2015).

In fact, no conceivable claim could be stated against the United States Attorney General because Plaintiff's only allegations concern the alleged failure to take action in response to Plaintiff's complaint that others had violated the ADA in state court proceedings. A plaintiff may not sue a governmental entity for failing to investigate or act upon a complaint. *See Walker v. Schmoke*, 962 F. Supp. 732, 733 (D. Md. 1997).

After Defendant filed its reply, Plaintiff has filed an additional memorandum captioned "Opposition to Defendant United States Attorney General, Loretta E. Lynch's Motion to Dismiss." (Doc. 33).  The supplemental memorandum - in essence an unauthorized sur-reply - is procedurally improper and need not be considered by the Court.  To the extent that it is considered by any reviewing court, the undersigned finds it to be without legal merit.  In part, Plaintiff seeks a stay of proceedings until counsel can be appointed on his behalf.  However, civil litigants have no constitutional right to counsel, and the undersigned finds no unusual circumstances present in this case that would make such an appointment appropriate.

In addition to filing an improper sur-reply, on June 1, 2015 Plaintiff filed a "motion for leave for the DOJ, Civil Rights Division, to join Plaintiff in Americans With Disabilities Act Complaint." (Doc. 31).  Although the ADA permits the Department of Justice to seek intervention in ADA lawsuits, the ADA does not require the Department of Justice to intervene, nor is there any provision that would authorize this Court to grant Plaintiff's motion and compel the DOJ to intervene in a case in which Plaintiff has identified the Attorney General (and John Doe employees of the Department of Justice) as Defendants.  For these reasons, and for additional reasons expressed by the Attorney General in opposition to Plaintiff's motion, (Doc. 32), Plaintiff's motion seeking an order requiring the United States to intervene on his behalf in this litigation should be denied.

### c.  Rule 8(a)(2)

The United States Attorney General additionally argues that Plaintiff's complaint is subject to dismissal because it fails to comply with Rule 8(a)(2) and fails to state any plausible legal claim against Defendant.  As discussed above, the undersigned agrees.

### d.  Time-Barred

Plaintiff's claim(s) against the federal Defendant(s) rest on his allegations that, in July 2009 and again in January 2010, he filed complaints with the federal government concerning his then-ongoing state litigation.  Whether filed under §1983 or amended to state an analogous *Bivens* theory, any claims filed by Plaintiff against the federal Defendant would be barred by Ohio's two-year statute of limitations.

### D.  The Warren County Board of Commissioners

### 1.  Allegations and Claims

Lilley alleges that the Defendant Board employed Brenda Dunlap, one of the persons he accuses of engaging in a criminal conspiracy to embezzle funds from him, during a time when Dunlap had a conflict of interest and committed theft in office. (Doc. 1, ¶¶ 62-72).  Lilley further alleges that in 2008, he filed a Public Corruption Complaint with Board. (*Id.,* ¶ 74). "The Board of Commissioners had been or should have been aware of the events that took place in this complaint and the misconduct of their employee including Chief Magistrate Dunlap." (*Id.).*  He accuses the Board of failing to act on his Public Corruption Complaint.  "The Commissioners had been informed, but neglected to take any action." (*Id.*, ¶ 265).

In Causes of Action Nos. 39-42, and 46, Lilley contends that the Defendant Board's policies and actions deprived him of federally protected rights in violation of 42 U.S.C. § 1983.  (*Id.*, ¶¶17-51, 76-82).  In Causes of Action Nos. 43-44, Plaintiff additionally claims that the Board discriminated against him in violation of Title II of the Americans with Disabilities Act, "by refusing to accommodate services necessary to ensure an equal opportunity for Plaintiff to participate in Defendants' programs and activities." (*Id.*, ¶¶56, 64).  In his "Cause of Action No. 45," Lilley alleges the Board violated 42 U.S.C. § 1983 by "failing to maintain an employment environment in

conformity with federal and state constitutional and statutory mandates." (*Id.* at ¶71). Finally, in Causes of Action Nos. 47-49, Lilley claims that the Board is engaged in a conspiracy, and violated the Racketeer Influenced and Corrupt Organizations Act and the Ohio Corrupt Activities Act in violation of 42 U.S.C. § 1983. (*Id.*, ¶¶1-8, 83-90).

## 2. Grounds for Dismissal

Plaintiff's claims against Defendant Warren County Board of Commissioners ("the Board") are also properly dismissed, for many of the same reasons Plaintiff's claims against other Defendants are subject to dismissal.

### a. Failure to Comply with Rule 8(a)(2)

Plaintiff fails to sufficiently state a cause of action against the Board. In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that are "enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555. Plaintiff's complaint fails to meet this standard with respect to the Board. Plaintiff alleges in the most conclusory fashion that the Defendant deprived him of federally protected rights in violation of 42 U.S.C. § 1983, discriminated against him in violation of Title II of the Americans with Disabilities Act, "by refusing to accommodate services necessary to ensure an equal opportunity for Plaintiff to participate in Defendants' programs and activities," and violated § 1983 by "failing to maintain an employment environment in conformity with federal and state constitutional and statutory mandates." (Doc. 1, ¶¶56, 64, 71). Plaintiff also generally alleges the Board is engaged in a conspiracy, and violated the Racketeer Influenced and Corrupt Organizations Act and the Ohio Corrupt Activities Act, However, Plaintiff's complaint fails to state how or why the Board could be held liable. Accordingly, Plaintiff's complaint fails to state a claim upon which relief can be granted with respect to Board.

### b. Rooker-Feldman Doctrine

As the Defendant Board points out, Plaintiff seeks as relief notification by this Court to "the Warren County Court of Common Pleas that this Court now has supplemental jurisdiction in Case Number: 13CV84556 along with all other cases and claims presented in this Complaint pursuant to 28 U.S.C. Section 1367." (Doc. 1, Prayer for Relief, C).  In other words, not only is Plaintiff seeking this Court's review of decisions made by the state courts, but Plaintiff is seeking to have this Court exercise supplemental jurisdiction over the prior state cases.  For the reasons previously discussed, Plaintiff's suit is barred by the *Rooker-Feldman* doctrine.  Contrary to Plaintiff's apparent belief, the ADA does not override application of the doctrine.  *See generally McCready v. Michigan State Bar Standing Comm. On Character and Fitness*, 926 F. Supp. 618, 620 (W.D. Mich. 1995)(dismissing amended complaint, holding that *Rooker-Feldman* doctrine barred claims arising from the ADA, *aff'd,* 100 F.3d 957 (6th Cir. 1996)).

### c. Eleventh Amendment

The Board also argues that Plaintiff's claims are barred by the Eleventh Amendment.  As Plaintiff correctly points out, however, the Board is a local governmental entity rather than a state entity, and therefore is not entitled to Eleventh Amendment immunity.  *See In re Compugard Servs., Inc.*, 335 B.R. 661, 664 (N.D. Oh 2005)(holding that Eleventh Amendment immunity does not extend to Ohio board of county commissioners).

### d. Time-Barred Claims

The Board more persuasively argues that any claims against it are clearly time-barred.  Plaintiff's allegations against the Board arise from underlying state court cases dating back to 1995.  His primary complaint seems to be his allegation that in July 2008,

the Board failed to take any action on his Public Corruption Complaint.  As previously discussed, the statute of limitations for a §1983 claim in Ohio is two years, a deadline that expired long before Plaintiff filed this federal complaint.

In his response, Plaintiff argues that the "thirteen year long Probate Period, the Lawsuit for Redress Period and the First Financial Bank Period [were] all influenced by a conspiracy to [commit] fraud upon the Court…."  (Doc. 29 at 10).  Plaintiff reasons that no statute of limitations can be applied to the tort of "fraud upon the court."  Plaintiff's reasoning is not supported by law.  While "'fraud on the court' may be a basis for granting a motion for relief from final judgment under Federal Rule of Civil Procedure 60(b), …it has little relevance to the question of whether a cause of action was timely filed." *Easterling v. Gorman*, 2014 WL 2580657 (S.D. Ohio, June 9, 2014).  Plaintiff's reliance on a case from another jurisdiction, *Bulloch v. United States*, 763 F. 2d 1115, 1121 (10th Cir. 1985), is misguided.  In that case the Tenth Circuit reversed a lower court's decision to set aside a prior judgment under Rule 60(b), holding that the 25-year-old judgment should not be disturbed because the plaintiffs failed to show by "clear and convincing evidence that there was fraud on the court" in the earlier proceeding.

Plaintiff fails to cite to any controlling case law in the Sixth Circuit that would support a conclusion that his claims are not time-barred.  In any event, claims of fraud must state with particularity the circumstances that constitute fraud or mistake.  Fed. R. Civ. P. 9(b).  Aside from the fact that his complaint does not even include a claim against the Board for "fraud upon the court," Plaintiff has utterly failed to explain how the Board committed "fraud upon the court."  In fact, his "fraud on the court" argument does not even reference the Board.

### e.  Lack of Merit Based on Conclusory Allegations

Even if the claims were not barred for other reason, any §1983 claims would be subject to dismissal because Plaintiff fails to explain what actions or inactions taken by the Board (or its policies) could possibly have violated federal law.  For reasons previously discussed, the failure to investigate Plaintiff's 2008 Public Corruption Complaint does not constitute a violation of a cognizable federal right.

Plaintiff's conclusory allegations that the Board engaged in a conspiracy and/or violated RICO, also fail to state any cognizable claim.  "Claims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a §1983 claim."  *Farhat v. Jopke*, 370 F.3d at 599; *see also Van Dorn Co., Central States Can Co. Div. v. Howington*, 623 F. Supp. 1548, 1552 (N.D. Ohio 1985)(holding that a plaintiff must "first allege that some racketeering activity has occurred" that violated one or more subsections of 18 U.S.C. §1962 in order to state a claim under RICO).

Last, and also as previously discussed, Plaintiff makes only conclusory allegations that he has a disability, alleging that officers of the state and officers of the court have caused him pain that has evolved into "Post Traumatic Stress Disorder / Legal Abuse Syndrome."  (Doc. 1, ¶22).  He does not allege that he was discriminated against by the Board in any manner that would support a violation of Title II of the ADA against that Defendant.  In his response, he asserts that he has "been evaluated by a Licensed Forensic Psychology," and therefore "followed all the proper procedures" to request accommodations under the ADA.  (Doc. 29 at 11).  However, he has failed to allege that he was excluded from participation by the Board "by reason of such disability" as required to support a Title II claim.  He alleges that the Court denied his motion for a continuance and that the ADA Coordinator (once identified) failed to

properly respond and to provide the proper grievance procedures. None of those allegations involve any violation of the ADA by the Board, nor do they reflect exclusion from participation in the legal process due to a disability.

### E. Dismissal of Remaining Claims and Defendants

Having concluded that all four pending motions to dismiss should be granted, the undersigned is left to consider Plaintiff's remaining claims against the non-appearing Defendants. All remaining claims and Defendants also should be dismissed, both for failure of service, and for lack of jurisdiction.

Rule 4(m) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Plaintiff filed his complaint on February 23, 2015, more than 120 days ago, but there is no record of service on any of the following four Defendants: (1) First Financial Bank NA; (2) Jack C. McGowan; (3) American Express Bank FSB; or (4) GE Money Bank. This Report and Recommendation serves as notice to the Plaintiff that the undersigned recommends that the Court dismiss those four Defendants based upon the failure of service.

"Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351, 119 S. Ct. 1322 (1999). Indeed, absent either waiver or proper service of process, this Court does not have personal jurisdiction over this

Defendant. *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (and cases cited therein). Plaintiff bears the burden of exercising due diligence in perfecting service of process and in showing that proper service has been made. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); *Jacobs v. University of Cincinnati*, 189 F.R.D. 510, 511 (S.D. Ohio 1999).

In addition to Plaintiff's failure to serve the four referenced Defendants, Plaintiff fails to identify the nature of any claims against them. For example, although the four are listed in the caption of Plaintiff's Complaint, they are not clearly identified in the body of the Complaint as "Parties to the Action" as are the other Defendants. (Doc. 1, ¶¶16-21). The lone individual is briefly referenced within the body of the Complaint as an attorney who was party to some type of conspiracy. (*See id.*, ¶81). The other three un-served Defendants all appear to be financial entities or institutions. None appear to be any type of state actor, precluding relief under 42 U.S.C. §1983.

To the extent that any claims against any of the four exist (the undersigned can discern none), they would appear to arise under state law. This Court would have original jurisdiction only to the extent that Plaintiff alleges causes of action under the laws and Constitution of the United States. No diversity jurisdiction exists over any state law claims as provided in 28 U.S.C. § 1332 because complete diversity is lacking between the parties. Because Plaintiff's federal law claims should be dismissed, the Court no longer has original jurisdiction and should decline to exercise supplemental jurisdiction over the pendent state law claims, if any. *See* 28 U.S.C. §1367(c)(3). Accordingly, any state law claims also should be dismissed without prejudice.

### III. Conclusion and Recommendations

For the reasons stated herein, **IT IS RECOMMENDED THAT** the pending motions to dismiss (Docs. 15, 16, 22, 26) be **GRANTED** based upon a lack of

jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P.  Alternatively, the Defendants' respective motions to dismiss should be granted under Rule 12(b)(6) because Plaintiff has failed to state any cognizable federal claim against them.  **IT IS FURTHER RECOMMENDED THAT** the motion of Plaintiff to compel the Department of Justice to join as a Plaintiff in this lawsuit (Doc. 31) be **DENIED**, and that all other claims and Defendants also be dismissed.   As all claims and Defendants should be dismissed, this case should be closed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

STEPHEN R. LILLEY,                                    Case No. 1:15-cv-128

        Plaintiff,                                          Barrett, J.
                                                      Bowman, M.J.
    v.

HON. ROBERT PEELER, et al.,

        Defendants.


**NOTICE**


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).